**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN HALL, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 14-cv-02687 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| JACQUELINE LASHBROOK, Warden, ) | |
| Stateville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner John Hall, who is currently serving a prison sentence at Menard Correctional Center, brings this *habeas corpus* action pursuant to 28 U.S.C. § 2254 challenging his 2008 convictions for murder, arson, and concealment of a homicidal death from the Circuit Court for the Twelfth Judicial Circuit Court, Will County, Illinois. Hall's *habeas corpus* petition raises a variety of arguments, including: (1) the evidence was insufficient to support his arson conviction; (2) the trial court erroneously allowed the State to introduce evidence that he sold marijuana and abused two girlfriends; (3) the trial court failed to consider adequately his post-trial motion alleging ineffective assistance of counsel; (4) his trial counsel failed to challenge the State's knowing use of false testimony, his appellate counsel failed to raise the issue on appeal, and the state post-conviction process failed to provide an adequate remedy; and (5) the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is unconstitutional. For the reasons set forth below, the Court denies the petition on the merits.

## BACKGROUND

The Court draws the following factual history from the state court record. (Dkt. No. 11.)[1]

Hall murdered the victim, Rose Bailey, for stealing money from him. *Illinois v. Hall*, No. 3-08-0214, slip op. at 2 (Ill. App. Ct.) ("Direct Appeal") (Dkt. No. 11-1 at 1.) Heather Surdey, who testified for the prosecution at Hall's trial, was present for the murder and the concealment of Bailey's body. (*Id.*)

During her trial testimony, Surdey explained that Hall called her at 9:00 p.m. on July 2, 2005 and asked her to come to his apartment in Joliet, Illinois. (*Id.*) Surdey, who had been dating Hall, expected a social visit and so she picked up a movie and beer before going over to the apartment. (*Id.*) Upon arriving, however, Surdey witnessed Bailey crying and bleeding in the apartment. (*Id.*) Surdey also saw a long knife on a table. (*Id.*) Surdey suggested to Hall that they take Bailey to the hospital. (*Id.*) Hall responded by hitting Bailey in the face with a clothes iron. (*Id.*) Surdey did not flee because Hall had taken her keys and phone, and she feared for her life after witnessing him strike Bailey. (*Id.*)

According to Surdey, Hall then beat Bailey with his fists and belt over the next three hours. (*Id.*) He also placed Bailey's fingers between the door and door jam and closed the door on her fingers. (*Id.*) Hall eventually put Bailey in the bathroom and had sex with Surdey in the bedroom. (*Id.*) Hall then locked Surdey in the bedroom. (*Id.*)

Surdey was eventually able to get out of the bedroom. (*Id.*) She found Bailey in the bathroom tied up with wire. (*Id.*) Surdey again suggested to Hall that they take Bailey to the

---

[1] The state court's factual findings are presumed correct unless Hall, as the petitioner, rebuts that presumption by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. § 2254(e)(1)). Hall has not made such a showing here.

hospital. (*Id.*) Hall refused, instead instructing Surdey to go home, change clothes, and return with her dirty clothes. (*Id*. at 2–3.) Surdey complied with Hall's instructions and returned to her home to shower and change clothes. (*Id*. at 3.) She did not call the police after leaving the apartment. (*Id*.)

Surdey testified that she found Bailey dead upon returning to the apartment. (*Id*.) Hall told her that Bailey had choked on her own blood. (*Id*.) Hall then bagged up marijuana for sale, and he and Surdey went on his sales rounds. (*Id*.) Hall and Surdey also stopped to buy garbage bags and cleaning supplies, and then they returned to the apartment. (*Id*.) Hall told Surdey to clean up Bailey's blood from the carpet, walls, and the couch in the apartment, but she was unable to clean away the blood. (*Id*.)

Surdey and Hall then left the apartment a second time to make additional drug deliveries. (*Id*.) They also stopped at a gas station, where they purchased a plastic gas can and gasoline. (*Id*.) After returning to the apartment, they removed Bailey's body in a garbage can. (*Id*.) The pair drove in Surdey's van to a secluded area in Bonfield, Illinois. (*Id*. at 4.) Once there, Hall got out of the van, taking the garbage can with Bailey's body and gasoline can with him. (*Id*.) Surdey remained in the vehicle while Hall ventured into the field. (*Id*.) Shortly afterward, she saw flames coming from the direction where Hall had gone. (*Id*.)

The pair then drove to a bar in Channahon, Illinois to attempt to establish an alibi. (*Id*.) They later returned to Hall's apartment, where they again tried unsuccessfully to clean up the blood. (*Id*.) Hall instructed Surdey to clean her van and buy new tires, which she did. (*Id*.) Bailey's charred remains were discovered the next day on a smoldering woodpile in Bonfield. (*Id*.)

A few days later, on July 8, 2005, Hall's apartment was heavily damaged by a fire. (*Id.*) At trial, the jury heard that a subsequent investigation concluded the fire had been set intentionally. (*Id.* at 7.) The investigation determined that an ignitable liquid was used to start the fire. (*Id.*) The liquid pour pattern suggested that the fire started in the lower level of a stairway leading to Hall's apartment, and a firefighter responding to the fire observed flames coming from the doorway of the apartment. (*Id.*) A search of the apartment building revealed that the fire had charred the outside of the apartment. (*Id.*) In addition, a two-gallon gas can was discovered under a badly charred couch in the apartment living room. (*Id.*) The nozzle to the gas can was found at the base of the exterior stairs leading to the apartment, and a second gas can was discovered in a garbage bag under the same stairway. (*Id.*) The two gas cans and nozzle were tested for fingerprints, but none were found. (*Id.* at 8.) The forensic scientist who tested the gas cans and nozzle for fingerprints explained that he would not have expected to find fingerprints on a charred surface or an item that had been left outside exposed to the elements. (*Id.*)

The jury also heard testimony from witness Lauren Watters. She testified that she visited Hall at a hotel in Joliet, Illinois two days after the fire. (*Id.*) Watters had previously been to Hall's apartment before the fire. (*Id.*) She noticed that Hall had several items at the hotel that she had observed at his apartment prior to the fire. (*Id.*) Those items included a glass chessboard, a model car, a DVD player, a PlayStation 2 video game console, a duffle bag filled with rap music that Hall had written, two or three garbage bags full of clothes, and eight to ten pairs of shoes. (*Id.*)

The jury ultimately found Hall guilty. (*Id.*) His conviction was affirmed on direct appeal, (*id.* at 17), and his post-conviction petition was rejected. *Illinois v. Hall*, 2013 IL App (3d)

110917-U (Ill. App. Ct. Aug. 12, 2013) ("Post-Conviction Appeal") (Dkt. No. 11-3 at 42). Hall now brings his petition for a writ of *habeas corpus* before this Court.

## LEGAL STANDARD

This Court may not issue a writ of *habeas corpus* unless the petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). As the state courts adjudicated Hall's claims on the merits, this Court's review of the present *habeas* petition is governed by AEDPA. Thus, the Court may not grant *habeas* relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d).

"'A federal *habeas* court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An unreasonable application occurs when a state court identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of Petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted)).

Clearly established federal law consists of the "'holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)). The state court is not required to cite, or even be aware of, the controlling Supreme Court standard, as

long as the state court does not contradict that standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). This Court begins its analysis with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Moreover, the Court's analysis is "backward-looking"—the Court is limited to reviewing the record before the state court at the time that court made its decision. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Ultimately, AEDPA's standard is "intentionally difficult for [a] Petitioner to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam). "As a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded [*sic*] disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "'highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt.'" *Woodford*, 537 U.S. at 24.

## DISCUSSION

### I. Sufficiency of Evidence Supporting Arson Conviction

Hall first argues there is insufficient evidence to support his arson conviction. The Court applies a "twice-deferential standard" in reviewing a state court's ruling on the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). First, the Court must defer to the verdict. "'[I]t is the responsibility of the jury— not the court—to decide what conclusions should be drawn from evidence admitted at trial.'" *Id.* at 43 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "The evidence is sufficient to support a conviction whenever, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

6

could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citations omitted) (emphasis in original). Second, in addition to deferring to the jury's findings, the Court must accord deference to the state appellate court's opinion in accordance with § 2254(d). As noted above, that section allows for federal *habeas corpus* relief only if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* The state appellate court decision on direct appeal is the relevant judgment for the Court's review as it was the last decision to consider Hall's claim on the merits. *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015).

The jury found Hall guilty of committing arson. Under Illinois law, "[a] person commits arson when 'by means of fire or explosive he knowingly damages any real property, or any personal property having a value of $150 or more, of another without his consent.'" (Direct Appeal at 5 (quoting 720 ILCS 5/20-1).) The prosecution may prove the elements of arson through circumstantial evidence. *People v. Howery*, 687 N.E.2d 836, 858 (Ill. 1997) (affirming arson conviction based solely on circumstantial evidence); *see also United States v. Adame*, 827 F.3d 637, 644 (7th Cir. 2016) ("Arson can be proven by circumstantial evidence.") (affirming federal conviction for arson under 18 U.S.C. § 844(i)). "The crime of arson is, by its very nature, secretive and usually incapable of direct proof." *Illinois v. Rojas*, No. 2014 IL App (1st) 130197-U, 2014 WL 5242598, at *5 (Ill. App. Ct. Oct. 14, 2014) (internal quotation marks and citations omitted).

Here, the state appellate court decision affirming Hall's conviction was neither contrary to, nor an unreasonable application of, clearly established federal law. The state court properly identified the relevant standard controlling Hall's sufficiency of the evidence challenge. (Direct

7

Appeal at 5–6.) Although the state court cited only state court opinions (and no federal case law), this was sufficient under § 2244(d)'s deferential standard of review because the state cases cited correctly set out the constitutional sufficiency of the evidence standard. *Early*, 537 U.S. at 8.

Furthermore, as the state court recognized, there undoubtedly was sufficient evidence to support the jury's verdict that Hall committed arson. For example, the fire investigation identified evidence that the fire was set intentionally. An ignitable liquid was found outside of Hall's apartment, along with a gas can inside Hall's apartment and a second gas can under the stairs leading to his apartment. The evidence also indicated that the fire was part of a larger plan by Hall to destroy evidence of Bailey's murder. The jury heard testimony that Hall had burned Bailey's body in a secluded field in rural Illinois. He also instructed Surdey to replace her tires and clean her van an attempt to prevent the police from tracking the van to the Bonfield location where he disposed of Bailey's body. And he also directed Surdey to attempt to clean his apartment, although she was unable to do so. Based on this evidence, the jury was entitled to make the reasonable inference that Hall set the fire to destroy the blood evidence in his apartment.

As additional circumstantial evidence of his guilt, the jury heard that Hall had multiple bags of clothing, numerous pairs of shoes, and various personal possessions in his motel room two days after the fire. This strongly suggests that Hall removed certain items from his apartment prior to the fire. That inference, in turn, demonstrates that Hall knew about the fire before it occurred, which naturally leads to the conclusion that he set the fire himself. That fact—along with the fact that Hall had attempted to destroy evidence to conceal his murder of Bailey and the two gas cans that were found in and around his apartment—is more than sufficient to support

Hall's arson conviction. Consequently, the state appellate court's decision to affirm that conviction was not unreasonable.

## II. Introduction of Other Crimes Evidence

Hall next challenges the introduction at trial of evidence of other crimes, specifically, his marijuana sales and his physical abuse of two prior girlfriends. As a general matter, however, an error in the introduction of evidence does not raise a cognizable issue for a *habeas* petition. Evidentiary rulings are governed by state law, not federal law. *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004). And "errors of state law in and of themselves are not cognizable on *habeas* review." *Id.* at 511.

Nonetheless, an evidentiary error may result in a federal constitutional violation when the error "so infused the trial with unfairness as to deny due process of law." *Estelle v. McQuire*, 502 U.S. 62, 75 (1991) (internal quotation marks and citations omitted). However, no such due process violation exists in this case. As the state appellate court noted, the other crimes evidence was introduced at Hall's trial for a purpose other than showing his propensity to commit crimes. (Direct Appeal at 11.) The marijuana evidence was introduced as part of the time narrative involving the crime, as Hall distributed marijuana during the time between murdering Bailey and burning her body. (*Id*. at 11–12.) In the same way, the state appellate court explained that the evidence regarding Hall's abuse of his prior girlfriends was relevant to Hall's *modus operandi* of committing violence against women. (*Id*. at 13.) The *modus operandi* evidence supported other testimony that Hall murdered Bailey by physically assaulting her. *See generally Lieberman v. Washington*, 128 F.3d 1085, 1095 (7th Cir. 1997) (recognizing defendant's history of prior assaults on other women as *modus operandi* evidence).

In sum, Hall's claim regarding the introduction of other crimes evidence is non-cognizable, but even if the Court could consider it, the claim would be meritless.

### III.  Denial of Hall's Post-Trial Motion

Hall has also challenged the trial court's handling of his ineffective assistance of counsel argument. Hall filed a *pro se* post-trial motion in state court following his conviction and prior to his sentencing. (Direct Appeal at 15.) In the motion, he alleged that his trial counsel failed to impeach properly Watters and Surdey and failed to call Leon Smith as a witness on his behalf. (*Id.* at 70–71.)

The trial court rejected Hall's arguments, finding that his counsel did attempt to impeach Watters and Surdey and raised objections to the court's evidentiary rulings relating to those witnesses. (*Id.* at 67–68, 70–71). With respect to the failure to call Smith, Hall's counsel, who was a member of the Will County Public Defender's office, represented that an investigator from his office had interviewed Smith on at least two occasions prior to trial. (*Id*. at 71.) Based on those interviews, Hall's counsel concluded that it would be improper to call Smith as a witness. (*Id*. at 71–72.) Thus, the trial court rejected Hall's argument as to Smith. (*Id*. at 72.)

On direct appeal to the Illinois appellate court, Hall was represented by counsel from a different office, the Office of the State Appellate Defender. Hall's brief on direct appeal did not raise either of the previously-raised ineffective assistance of counsel arguments. Instead, Hall sought remand of his post-trial motion for additional proceedings because the trial court "did not conduct an adequate inquiry into its allegations but rather precipitously denied it." (*Id.* at 21.) In other words, Hall raised a claim pursuant to *Illinois v. Krankel*, 464 N.E.2d 1045 (Ill. 1984).[2]

---

[2] Although neither Petitioner's Hall's brief in the state appellate court nor the state appellate court's decision cites d to *Krankel*, it is clear that the disputed issue at dispute was a *Krankel* claim. The appellate

*Krankel* established a framework for evaluating *pro se* post-trial claims of ineffective assistance of counsel. Under *Krankel*, the trial court first must examine the factual basis of the defendant's claim. *Illinois v. Moore*, 797 N.E.2d 631, 637 (Ill. 2003). The trial court may deny the motion immediately if the claim is meritless or pertains only to matters of trial strategy. *Id*. However, if the allegations show "possible neglect of the case," the court should appoint a new attorney to represent the defendant at a hearing on his claim. *Id*.

Here, the state appellate court rejected Hall's *Krankel* argument, holding that the trial court had conducted a sufficient inquiry into Hall's allegations and found them meritless. (Direct Appeal at 15–16.) Hall now seek to renew his *Krankel* claim before this Court, but the *Krankel* standard is a common law procedure developed by the Illinois Supreme Court. *Illinois v. Ayres*, 88 N.E.3d 732, 734 (Ill. 2017). Consequently, a petitioner is not entitled to *habeas corpus* relief on a *Krankel* claim because it raises a non-cognizable issue of state law. *See Payton v. Pfister*, No. 11 C 6610, 2015 WL 5829749, at *14 (N.D. Ill. Oct. 1, 2015) (collecting cases holding that a *Krankel* claim raises non-cognizable state law issue). Accordingly, Hall's claim must be denied.

For completeness, the Court notes three additional points. First, even if the *Krankel* standard were somehow transformed from a state to federal constitutional standard, Hall would still be unsuccessful with his claim here because there is no clearly established federal law from the Supreme Court mandating that a court conduct a *Krankel* inquiry as a matter of federal constitutional law. Hall would thus be unable to meet his burden under AEDPA. Second, the trial court did not commit an error under the *Krankel* standard. *Krankel* authorizes the trial court to dismiss Hall's ineffective assistance of counsel claim immediately for lack of merit. Finally, the

---

court and the parties instead cited to more recent pronouncements from the Supreme Court of Illinois Supreme Court restating the *Krankel* standard, such as *Illinois. v. Moore*, 797 N.E.2d 631 (Ill. 2003).

Court has interpreted Hall's claim as arising under *Krankel*, but even if the Court construed his claim as a traditional ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), it would be meritless.

On the latter point, to demonstrate ineffective assistance of counsel, Hall must demonstrate both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential, and applying *Strickland* under AEDPA (which also requires deference) results in an increased amount of deference to the state court's determination. *Knowles*, 556 U.S. at 123. Hall cannot demonstrate either deficient performance or prejudice with respect to either of his ineffective assistance of counsel arguments. As to Watters and Surdey, the trial court noted that Hall was merely repeating arguments that his counsel had already preserved in a separate post-trial motion. Regarding Smith, Hall's counsel investigated Smith's potential testimony and concluded as a matter of trial strategy that it would be improper to present him as a witness. Therefore, Hall's trial counsel cannot be faulted for either aspect of his performance. Nor can Hall demonstrate prejudice, considering the overwhelming evidence of his guilt. For example, Surdey testified that Hall killed Bailey and disposed of her body. Moreover, Hall's apartment was set on fire only a few days after the murder, yet his possessions had been moved out of the apartment prior the fire. Finally, fire investigators found evidence of arson, including a burnt gas can inside Hall's apartment.

In sum, Hall's *Krankel* claim is not cognizable. Even if it were, it would be meritless. Additionally, any underlying *Strickland* argument (which Hall did not present) would be meritless as well.

### IV. Failure to Challenge False Testimony

Next, Hall raises a multi-layered argument regarding Surdey's testimony. At trial, defense counsel attempted to impeach Surdey as to whether she heard Hall's phone ring or heard Hall speak on the phone when she first arrived at the apartment. (Post-Conviction Appeal, 2013 IL App (3d) 110917-U, Dkt. No. 11-3 at 44–45.) Surdey testified that she did not hear Hall's phone ring nor did she hear him speak on the phone during that period. (*Id*. at 3.) She suggested that Hall may have turned off his phone. (*Id*.) Defense counsel then impeached Surdey's testimony with Lauren Watters's testimony that she spoke with Hall on the telephone that evening. (*Id*.) Counsel also provided phone records documenting Hall's calls. (*Id*. at 4.) During closing argument, defense counsel argued that the telephone calls showed that Surdey's testimony was unreliable, as she was the state's primary witness against Hall. (*Id*.)

Nonetheless, Hall argued in his post-conviction petition that the prosecution knowingly used false testimony, that his counsel was ineffective for failing to object to the state's use of false testimony, and that his appellate counsel was ineffective for failing to raise this false testimony claim on direct appeal. (*Id*.) The state appellate court—the last court to consider Hall's claim on the merits—rejected his arguments. (*Id*. at 5–7.)

In the instant petition, it is unclear whether Hall is asserting a claim for the knowing use of false testimony or whether his claim is limited to ineffective assistance of counsel. Regardless, the Court finds that there was no knowing use of false testimony.

To establish a *Napue* claim for knowing use of perjured testimony, a petitioner must demonstrate that: (1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a likelihood that the false testimony affected

13

the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264, 269–70 (1959); *Ashburn v. Korte*, 761 F.3d 741, 757 (7th Cir. 2014).

Hall cannot demonstrate that the prosecution used perjured testimony. "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Cardena*, 842 F.3d 959, 978 (7th Cir. 2016) (internal quotation marks and citations omitted). The fact that a witness may have different personal knowledge, perception, or recollection of an issue does not mean that the prosecution used deliberately false testimony. *Id.* Additionally, the Court does not see how confusion over this relatively minor issue of whether Surdey recalled Hall speaking on the telephone could have impacted the jury's verdict. There is no indication of perjured testimony violation in this case, and consequently defense counsel was not deficient for failing to raise a *Napue* issue at trial or on direct appeal.

Beyond the underlying *Napue* issue, Hall cannot overcome the additional hurdle presented by AEDPA. *Napue* requires that a jury not know testimony is false. *Long v. Pfister*, 874 F.3d 544, 548 (7th Cir. 2017) (en banc). However, there is no clearly established federal law from the Supreme Court holding that a prosecutor must correct a witness's inconsistent testimony when the defense counsel has already recognized the inconsistency and presented a clarification to the jury. *Id.* at 549. Accordingly, for the sake of argument, even if there had been false testimony, defense counsel brought the issue to the jury's attention.

As a final point, Hall argues that the state post-conviction proceeding was unconstitutional because it failed to provide him with an adequate remedy for the alleged constitutional violations. This argument is meritless for two reasons. First, as discussed above,

14

Hall had the opportunity to raise his constitutional claims through the state post-conviction proceeding. The mere fact that he was unsuccessful does not mean that the proceeding was inadequate. Second, and more fundamentally, there is no constitutional right to a state post-conviction or other collateral proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

### V. Challenge to AEDPA

Hall's final claim alleges that AEDPA itself is unconstitutional because it discriminates against African Americans in conflict with the Fourteenth Amendment to the United States Constitution. Hall argues that the Fourteenth Amendment guarantees African Americans the full rights of citizenship. He views the ability to petition for a writ of *habeas corpus* as a right of citizenship and believes that AEDPA wrongfully restricts this right. However, the use of *habeas corpus* for collateral review of state court judgments in the lower federal courts is subject to legislative control. *Lindh v. Murphy*, 96 F.3d 856, 867–68 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). The Fourteenth Amendment does not guarantee a right to collaterally attack a state court judgment free from legislative curtailment under AEDPA. *Id*. Congress' passage of AEDPA thus does not abridge the rights guaranteed by the Fourteenth Amendment.

## CONCLUSION

For the foregoing reasons, Hall's *habeas corpus* petition (Dkt. No. 1) is denied in its entirety on the merits. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c), as reasonable jurists would not find this Court's resolution of Hall's claims to be debatable. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S.

880, 893 n.4 (1983)). Hall is advised that this is a final decision ending his case before this Court. If Hall wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Hall need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes to ask the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion has been ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

ENTERED:

Dated: December 28, 2018

_____
Andrea R. Wood
United States District Judge